IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ELSIBETH BRANDEE MCCOY,

        Plaintiff,

v.                                                          CIVIL  ACTION  NO.  3:10-0368

STEVE CANTERBURY, Administrative
Director for SUPREME COURT OF
APPEALS OF WEST VIRGINIA,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Elsibeth McCoy ("Plaintiff") brought this action *pro se* on March 22, 2010 under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., seeking monetary and

injunctive relief against Steve Canterbury ("Defendant") in his capacity as Administrative Director

for the West Virginia Supreme Court of Appeals.  The original complaint alleged that both the

Cabell County Courthouse and Defendant had engaged in unlawful discrimination against Plaintiff.

Plaintiff amended her complaint to remove the Cabell Count Courthouse as a named defendant.

Defendant then filed an answer on June 15, 2010.  Thereafter, the Court again granted Plaintiff leave

to amend her complaint in order to clarify that she would proceed solely on a disparate impact

theory.  On October 5, 2010, Plaintiff filed her second amended complaint in accordance with the

Court's Order.

On October 18, 2010, Defendant filed a motion for a more definite statement, claiming that

the amended complaint lacked coherence and prevented him from forming an appropriate and

-1-

logical response.  The Court granted that motion, and Plaintiff filed yet another amended complaint on November 8, 2010.  Defendant now asks this Court to dismiss Plaintiff's third amended complaint.

The basis of Plaintiff's allegations is admittedly not very clear.  Plaintiff is a minority female who held a position as a law librarian at the Cabell County Courthouse from July of 2006 to January of 2009.  Plaintiff generally claims that she was subjected to discriminatory employment practices while she worked in this capacity.  She further complains that staff practices in the Cabell County Courthouse are part of a systematic discrimination problem within the West Virginia workforce.  In that vein, she contends that the West Virginia court system is plagued by recruiting and hiring practices that afford employment opportunities only to "homogenous" sources who have political and familial connections to people in positions of power.  This pattern of "nepotism," she submits, operates to deny minorities equal rights, and specifically denied her essential opportunities for advancement.

## I.     Discussion

Defendant seeks to dismiss the third amended complaint on three separate grounds.  First, he alleges that Plaintiff lacks standing to pursue the claim.  Second, he argues that Plaintiff has failed to state a claim for which relief may be granted.  Finally, he contends that he is not subject to Title VII liability in his personal capacity.  The Court finds that the first two grounds are sufficient to resolve this matter, and therefore does not address the third.

### A.     Standing

Defendant first seeks to dismiss the third amended complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that Plaintiff lacks standing to prosecute her

disparate impact claim.[1]

Under Article III of the Constitution, the federal courts have jurisdiction only over "cases" and "controversies."  U.S. Const. art. III, § 2.  "Standing is a threshold jurisdictional question for federal courts" which flows from Article III's limitations.  *See Mylan Pharmaceuticals, Inc. v. FDA*, 04-242, 2005 U.S. Dist. LEXIS 22269, at *7-8 (N.D. W. Va. Sept. 29, 2005).  To properly invoke the jurisdiction of the federal court under the standing doctrine, the plaintiff bears the burden of establishing:

> (1) an "injury in fact" to a "legally protected interest" that is both "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and the conduct complained of that is "fairly traceable," and not "the result of the independent action of some third party not before the court"; and (3) a non-speculative likelihood that the injury would be redressed by a favorable judicial decision.

*Frank Krasner Enters., L.T.D. v. Montgomery Cnty.* 401 F.3d 230, 234 (4th Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) (emphasis removed).

Under Title VII, a plaintiff may proceed under a disparate impact theory.  *See Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682 (4th Cir. 1986); *see also* 42 U.S.C. § 2000e-2(a).  Disparate impact claims provide protections for members of defined classes of persons against the discriminatory effects of seemingly neutral employment practices.  *See Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971); *Bell v. Cabela's, Inc.*, No. 08-05, 2009 U.S. Dist. LEXIS 28593, at *11-12 (N.D. W. Va. April 1, 2009).  "To establish a prima facie case of disparate impact discrimination

---

[1] The Fourth Circuit has explained that the plaintiff has the burden of establishing a factual basis for subject matter jurisdiction under Rule 12(b)(1).  *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).  In ruling on such a motion, the court may consider the pleadings' allegations as jurisdictional evidence.  *Id.* (citing *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558-59 (9th Cir. 1987)).

under Title VII, a plaintiff must 'show that [an alleged] facially neutral employment practice had a significantly discriminatory impact.'" *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 265 (4th Cir. 2005) (quoting *Walls v. City of Petersburg*, 895 F.2d 188, 191 (4th Cir. 1990) (citation omitted)). The plaintiff must further show that an employer's alleged discriminatory policy or practice consists of "'more than the mere occurrence of isolated or accidental or sporadic discriminatory acts.'" *Wright v. Nat'l Archives and Records Service*, 609 F.2d 702, 712 (4th Cir. 1979) (quoting *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977)). Rather, the plaintiff must reference as discriminatory conduct that which is the employer's "standard operating procedure." *Id.*

### 1.       Hiring Decisions

Plaintiff claims that Defendant is responsible for nepotism and word-of-mouth hiring that cost her numerous employment opportunities.  Defendant isolates each of the individual factual allegations Plaintiff makes in the latter respect, and argues that they are not, taken together, sufficient to establish standing to sue in this Court.  For purposes of Defendant's Motion to Dismiss, only the second and third elements of standing are at issue in this case.[2]  The Court addresses each argument in turn.

First, Plaintiff states that she "applied for a position in magistrate court that was not advertised to the public, only never to be considered."  Pl.'s Third Amend. Compl. 4-5, No. 30.

---

[2] Plaintiff also alleges that she has watched other minorities try to unsuccessfully gain access to employment opportunities in the Cabell County Courthouse that were not advertised to the public. Pl.'s Third Amend. Compl. 5, No. 30.  However, Plaintiff neither specifies these positions, nor makes any legal argument that she is empowered to pursue claims on behalf of the unnamed and unidentified individuals.  As a result, the Court does not consider these allegations in determining whether Plaintiff has standing to proceed.

Defendant argues that, even if Plaintiff is correct in her assertion that the magistrate court failed to properly consider her application because of a nepotistic hiring policy, she has still not shown a "causal connection" between the alleged injury and Defendant's challenged conduct.  For these reasons, he contends that a favorable decision from this Court will not afford Plaintiff any real relief. The Court agrees.

West Virginia Code § 50-1-9(a) states in pertinent part that "magistrate assistant[s] shall be appointed by the *magistrate* under whose authority and supervision . . . he or she shall serve."  W. Va. Code § 50-1-9(a) (emphasis added).  Under West Virginia law, Defendant has limited authority over local judicial officers:

> The director shall, when authorized by the Supreme Court of Appeals, be the administrative officer of said court and shall have charge, under the supervision and direction of the Supreme Court of Appeals, of: (a) All administrative matters relating to the offices of the clerks of the circuit and intermediary courts and of the offices of magistrate and all other clerical and administrative personnel of said courts; *but nothing contained in this act shall be construed as affecting the authority of the courts to appoint their administrative or clerical personnel*.

W. Va. Code § 51-1-17(a).[3]  As the emphasized text implies, Plaintiff's allegations concern actions taken by parties that are not before the Court—namely, the Magistrate to whom she applied. Alleged injuries "must be fairly traceable to the actions of the [defendant]."  *Dixon v. Edwards*, 290 F.3d 699, 711 (4th Cir. 2002).  "When claimed injuries are 'highly indirect' and result from 'the independent action of some third party not before the court,' too much speculation is required to connect the links in the chain of causation."  *Mayor of Baltimore v. Wells Fargo Bank, N.A.*, 677 F.

---

[3] Defendant also argues that the position of "magistrate assistant" does not constitute an "employee" for purposes of Title VII.  *See* 42 U.S.C. § 2000e(f) (noting that an "employee" is not "any person elected to public office in any State or political subdivision of any State . . . or any person chosen by such officer to be on such officer's personal staff . . . .").  The Court does not address this argument.

Supp. 2d 847, 849-50 (D. Md. 2010) (citing *Allen v. Wright*, 468 U.S. 737, 757-59 (1984)).  Under the standing inquiry, the Court finds that Plaintiff has failed to show that Defendant (1) caused this alleged injury, and (2) could have changed the result.  Therefore, Plaintiff lacks standing to pursue a claim against him.

Plaintiff also claims that she "questioned the pattern and practice [of discrimination] after she discovered [that] nepotism *may have* prevented her from obtaining two [other] positions in the courthouse."  Pl.'s Third Amend. Compl. 4, No. 30 (emphasis in original).  The Court notes that, despite numerous chances to amend the complaint, Plaintiff fails to specifically identify these two positions.  In any event, the Cabell County Courthouse contains numerous divisions of state and county government, but Defendant points out that he has hiring control only over the position of law librarian—Plaintiff's position.  Again, for the reasons noted with respect to Plaintiff's alleged injury for her failure to obtain a magistrate assistant position, any discriminatory conduct which may have occurred during Plaintiff's attempt to apply for these other unnamed jobs cannot reasonably be attributed to Defendant under the standing inquiry.  Plaintiff thus has no standing to pursue a claim for disparate impact on the basis of these allegations.

Inasmuch as the third amended complaint seeks injunctive or monetary relief based upon the aforementioned allegations, the Court **DISMISSES** it for lack of standing.

### 2.    Advancement Opportunities

Plaintiff responds to the Motion to Dismiss by pointing to various instances of discrimination—specifically, a loss in significant advancement opportunities—to which she was subjected while working as a law librarian.  First, she contends that she was the only member of the library staff in 2007 and 2008 who waited an "unexplainable" eleven months for her salary and

benefits to be approved by Defendant after she openly questioned the discriminatory hiring practices employed by the Court. She further alleges that she was subjected to racial stereotypes both when she asked for a reason why she was not selected for various positions, and on other occasions by the Courthouse Administrator in Cabell County. Finally, she contends that Defendant approved her salary and benefits for the law librarian position for thousands less than what she was offered upon initially accepting the position. Despite reporting all of these facts to Defendant, she submits that nothing was ever done to remedy the problems.

With these allegations, the Court finds that Plaintiff has stated sufficient facts to invoke the jurisdiction of this Court. Defendant admits that he has control over the position of law librarian, and presumably sets advancement standards for all employees who work in this capacity. Taking all reasonable inferences in Plaintiff's favor, the Court finds that she alleges a legally cognizable injury that is fairly traceable to Defendant's conduct. That is, in the absence of Defendant's alleged retaliation against Plaintiff for her decision to question discriminatory hiring practices, she would not have lost advancement opportunities in the manner noted. The Court thus **DENIES** Defendant's Motion to Dismiss for lack of standing insofar as it seeks dismissal of Plaintiff's disparate impact claim for damages premised on her allegations that she was denied equal advancement opportunities because of his discriminatory employment practices.

> **B.**    **Motion to Dismiss for Failure to State a Claim**

Even though Plaintiff has alleged some facts sufficient to state a legally-cognizable injury, the Court finds that the third amended complaint ultimately fails to state a claim for disparate impact under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In ruling on a motion to dismiss for failure to state a claim, the factual allegations in the complaint must be taken in the light most

favorable to the plaintiff.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mylan Laboratories, Inc. v.  Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) ("In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.").  However, the complaint must consist of more than mere "labels and conclusions," and contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 555, 570.  Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Plaintiff's individual factual assertions, taken together, fail to raise an inference that Defendant had any policy or practice that disparately impacted a minority group of which she was a part.  While the Court must liberally construe *pro se* complaints, Plaintiff's allegations here lack material factual detail.  The Fourth Circuit has previously stated:

> Central to proof of a prima facie case under [a disparate impact] theory is proof of an employment policy or practice which, though facially neutral or even benign in actual purpose, nevertheless imposes a substantially disproportionate burden upon a claimant's protected group as compared to a favored group within the total set of persons to whom it is applied.

*Wright*, 609 F.2d at 711.  A plaintiff may use statistical evidence to support her argument that an unlawful practice caused a discriminatory effect, or show a series of discrete episodes of the contested policy that demonstrate its disparate effects.  *Id.* at 711-12; *see also McIntosh v. Weinberger*, 810 F.2d 1411, 1428 (8th Cir. 1987) (examining workforce statistics offered by a plaintiff as evidence of disparate impact).

At the outset, Plaintiff does not cite any quantitative data that show how minorities in the West Virginia court system have been adversely impacted by nepotism and word-of-mouth hiring.

-8-

She does, however, provide two supplementary studies on the impact of discriminatory employment practices in West Virginia. The first study, conducted by the West Virginia Advisory Committee to the U.S. Commission on Civil Rights, discusses how familial hiring in different West Virginia counties has operated to exclude minorities from various jobs. The second document she provides is a report created by the Committee on Equality in the West Virginia Judiciary. This document simply gives operating guidelines to the West Virginia courts to ensure that the justice system may avoid the appearance of bias on the basis of race. Absent from either of these studies is any indication that the West Virginia court system itself utilizes employment practices which have a disparate impact on minorities.

Because Plaintiff fails to offer numerical or statistical evidence demonstrating disparate impact, she must allege sufficient factual detail of a series of discrete episodes of the contested employment practice in order to raise a plausible inference that it has a discriminatory impact on minorities, and that Defendant is responsible for it. The Court finds that Plaintiff has failed to meet this burden.

Plaintiff's allegations are simply insufficient to enable this Court to draw the plausible inference that Defendant maintained a systematic discriminatory policy encouraging nepotism in promotion and hiring decisions within the confines of the West Virginia court system. The only allegations attributable to Defendant are the following: (1) Plaintiff was the only member of the Cabell County law library staff in 2007 and 2008 who waited eleven months for her salary and benefits to be approved by Defendant after she questioned the discriminatory hiring practices employed by the Court; (2) Plaintiff was subjected to racial stereotypes by the Courthouse Administrator in Cabell County; and (3) Defendant approved Plaintiff's salary and benefits for the

law librarian position for thousands less than what she was offered upon initially accepting the position.  Plaintiff has not shown how these few isolated and sporadic instances amount to a policy or practice of discriminatory nepotism for which Defendant is ultimately responsible.[4]

Plaintiff implies that the Court has already found her allegations sufficient to withstand a motion to dismiss for failure to state a claim.  In the Court's October 25, 2010 Order granting Defendant's motion for a more definite statement, the Court noted that it believed Plaintiff's allegations in the second amended complaint to be "sufficient to put Defendant on notice of her theory that he is responsible for systematic discriminatory practices prevalent in the West Virginia court system." [Doc. 29].  Plaintiff overlooks the procedural differences between a Rule 12(e) motion and a Rule 12(b)(6) motion.  A motion for a more definite statement under Rule 12(e) is used in circumstances where a pleading prevents a party from reasonably forming a logical response.  Fed. R. Civ. P. 12(e).  In the cited statement, the Court concluded only that a single portion of Plaintiff's claim was sufficient to put Defendant on notice of her theory of liability.  But a naked theory of liability that lacks factual clothing is not sufficient to withstand a motion to dismiss for failure to state a claim.  In that regard, Plaintiff has failed to provide the required factual detail to raise a plausible disparate impact claim against Defendant.  For this reason, the Court **GRANTS** Defendant's Motion to Dismiss the remaining portions of Plaintiff's third amended complaint, and **DISMISSES** the third amended complaint.

---

[4] Nepotism by itself does not necessarily constitute a violation of Title VII "unless it is based on race or religion."  *Gilliam v. Lee Cnty. Sch. Bd.*, No. 01-00083, 2002 U.S. Dist. LEXIS 24858, at *13 n. 6 (W.D. Va. Dec. 30, 2002) (citing *Thomas v. Washington Cnty. Sch. Bd.*, 915 F.2d 922, 925 (4th Cir. 1990)).

**II.     Conclusion**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss [Doc.31] and

**DISMISSES** the third amended complaint.  [Doc. 30].

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel

of record and any unrepresented parties.


ENTER:          December 20, 2010


ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE